# EXHIBIT A

**EXHIBIT A**
**Patent Oriented Discovery Plan**

1.    **Discovery Requests**

In responding to discovery requests, each party[1] is to construe broadly terms of art used in the patent field (*e.g.*, "prior art," "best mode," "on sale," etc.), and read them as requesting discovery relating to the issue as opposed to a particular definition of term used.  Compliance with this Order is not satisfied by the respondent's inclusion of a specific definition of the term-of-art in its response, and limiting its response to that definition.

2.    **Number of Interrogatories**

No more than 25 interrogatories (counted in accordance with Fed.R.Civ.P. 33(a)) may be served by each side without leave of court.

3.    **Number of Depositions**

Excluding depositions of expert witnesses, each side is permitted to take no more than 15 depositions without leave of court.  Deposition(s) of a corporation under Fed.R.Civ.P. 30(b)(6) may not total more than 21 hours of testimony (irrespective of the number of 30(b)(6) notices served on that corporate party) without leave of court.  The 21 hours includes all deposition time, including questions, reasonably succinct objections, and a reasonable number of recesses, but excludes any recess greater than 15 minutes.  The parties may address any dispute concerning the time to the court.  Regardless of the number of persons produced in response to any 30(b)(6) notice(s), each 7 hours of

---

[1] For purposes of this document, "Autoscribe" will refer to Plaintiffs in this litigation, Autoscribe Corporation and Pollin Patent Licensing, LLC, and "Wells Fargo" will refer to Defendants in this litigation, Wells Fargo Bank, N.A. and Wells Fargo Financial, Inc.

1

testimony taken pursuant to said 30(b)(6) notice(s) counts as one deposition in determining the number of depositions allowed under this paragraph.

### 4. Expert Reports

Supplemental Expert Reports shall be permitted, only if served promptly following the discovery of information not known or reasonably available to the party's expert at the time of an earlier report. Following the submission of a Supplemental Expert Report, the submitting party shall make the expert available for deposition. Any Supplemental Expert Report shall be served no later than 30 days prior to the scheduled first day of trial.

### 5. Infringement, Invalidity and Unenforceability Contentions

The parties have agreed to the following procedure for the disclosure of infringement, invalidity and unenforceability contentions:

A.    Initial Infringement Contentions

On or before **January 13, 2011**, Autoscribe must serve its "Initial Infringement Contentions," which shall contain the following information:

i.    Each claim of each patent in suit that is allegedly infringed by Wells Fargo, including for each claim the applicable statutory subsections of 35 U.S.C. § 271 asserted;

ii.    Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of Wells Fargo of which Autoscribe is aware. This identification shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if known. Each method or process shall be identified by name, if

known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process;

       iii.    A chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function;

       iv.    For each claim which is alleged to have been indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement.  Insofar as alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described;

       v.    Whether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality;

       vi.    For any patent that claims priority to an earlier application, the priority date to which each asserted claim allegedly is entitled; and

       vii.    If Autoscribe wishes to preserve the right to rely, for any purpose, on the assertion that any of its own apparatuses, products, devices, processes, methods, acts, or other instrumentalities practice or have ever practiced the claimed invention, Autoscribe shall identify, separately for each asserted claim, each such apparatus, product, device, process, method, act, or other instrumentality that incorporates or reflects that particular claim.

viii.   If Autoscribe alleges willful infringement, the basis for such allegation.

B.   <u>Production Accompanying Initial Infringement Contentions</u>.

With the "Initial Infringement Contentions," Autoscribe shall produce or make available for inspection and copying:

i.   Documents (e.g., contracts, purchase orders, invoices, advertisements, marketing materials, offer letters, beta site testing agreements, and third party or joint development agreements) sufficient to evidence each discussion with, disclosure to, or other manner of providing to a third party, or sale of or offer to sell, or any public use of, the claimed invention prior to the date of application for the patent in suit.   A party's production of a document as required herein shall not constitute an admission that such document evidences or is prior art under 35 U.S.C. § 102;

ii.   All documents evidencing the conception, reduction to practice, design, and development of each claimed invention, which were created on or before the date of application for the patent in suit or the priority date(s) identified in Section 1.A.vi., whichever is earlier; and

iii.   A copy of the file history for each patent in suit.

iv.   All documents evidencing ownership of the patent rights by the party asserting patent infringement;

v.   If Autoscribe identifies instrumentalities pursuant to Section 1.A.vii., documents sufficient to show the operation of any aspects or elements of such instrumentalities Autoscribe relies upon as embodying any asserted claims.

Autoscribe shall separately identify by production number which documents correspond to each category.

C.    Initial Invalidity and Unenforceability Contentions.

On or before **March 1, 2011**, Wells Fargo shall serve its "Initial Invalidity and Unenforceability Contentions."

i.    The Initial Invalidity Contentions shall contain the following information:

1.    The identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious. Each prior art patent shall be identified by its number, country of origin, and date of issue. Each prior art publication shall be identified by its title, date of publication, and where feasible, author and publisher. Prior art under 35 U.S.C. § 102(b) shall be identified by specifying the item offered for sale or publicly used or known, the date the offer or use took place or the information became known, and the identity of the person or entity which made the use or which made and received the offer, or the person or entity which made the information known or to whom it was made known. Prior art under 35 U.S.C. § 102(f) shall be identified by providing the name of the person(s) from whom and the circumstances under which the invention or any part of it was derived. Prior art under 35 U.S.C. § 102(g) shall be identified by providing the identities of the person(s) or entities involved in and the circumstances surrounding the making of the invention before the patent applicant(s);

2.    A statement of whether each item of prior art anticipates each asserted claim or renders it obvious. If obviousness is alleged, an explanation of

why the prior art renders the asserted claim obvious.  If a combination of items of prior art allegedly makes a claim obvious, each such combination, and the reasons to combine such items must be identified.;

       3.     A chart identifying where specifically in each alleged item of prior art each limitation of each asserted claim is found, including for each limitation that Wells Fargo contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in each item of prior art that performs the claimed function; and

       4.     A detailed statement of any grounds of invalidity based on 35 U.S.C. § 101, indefiniteness under 35 U.S.C. § 112(2) or enablement or written description under 35 U.S.C. § 112(1) of any of the asserted claims.

       ii.     The Initial Unenforceability Contentions shall identify the acts allegedly supporting and all bases for the assertion of unenforceability.

       D.     Production Accompanying Initial Invalidity and
               Initial Unenforceability Contentions

With the "Initial Invalidity and Unenforceability Contentions," Wells Fargo must produce or make available for inspection and copying:

       i.     Source code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by Autoscribe in its Initial Infringement Contentions; and

       ii.     A copy or sample of each item of prior art of which Wells Fargo is aware that allegedly anticipates each asserted patent and its related claims or renders them obvious, which is does not appear in the file history of the patent(s) at issue or if a

copy is unavailable, a description sufficient to identify the prior art and its relevant details.  To the extent any such item is not in English, an English translation of the portion(s) relied upon shall be produced.

Wells Fargo shall separately identify by production number which documents correspond to each category.

     E.    <u>Final Infringement, Invalidity and Unenforceability Contentions</u>

On or before **July 29, 2011**, Autoscribe shall serve on all parties "Final Infringement Contentions" containing the information required by Section A (i) - (viii) above.  On or before **July 29, 2011**, Wells Fargo shall serve on all other parties "Final Invalidity and Unenforceability Contentions" containing the information required by C(i)1 – 4 and C(ii).

     F.    <u>Amendment of the Parties' Final Contentions</u>.  Amendment of "Final Infringement Contentions" or "Final Invalidity Contentions" may be made only by order of the Court upon a timely showing of good cause.  Nonexhaustive examples of circumstances that may, absent undue prejudice to the nonmoving party, support a finding of good cause include: (a) a claim construction by the Court different from that proposed by the party seeking amendment; (b) recent discovery of material, prior art despite earlier diligent search; and (c) recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions.  The duty to supplement discovery responses does not excuse the need to obtain leave of court to amend contentions.

    **6.**    **Claim Construction (_Markman_) Proceedings**

     A.    <u>Exchange of Claim Terms and Proposed Constructions</u>.

By **March 30, 3011**, the parties simultaneously shall exchange lists of claim terms, phrases, and clauses, which the parties contend should be construed by the court, and also exchange proposed constructions.

B.      Joint Claim Construction Statement.

By **April 13, 2011**, the parties shall confer for the purposes of narrowing and resolving their differences to facilitate the preparation of a joint claim construction statement, which must be filed with the court by **April 29, 2011**. The joint claim construction statement must contain (A) the construction of those claim terms, phrases and clauses on which the parties agree; and (B) each party's proposed construction of each disputed claim term, phrase, and clause. If a party asserts a disputed claim term, phrase, or clause needs no construction, the party must so state and concisely explain why no construction is necessary.

C.      Initial *Markman* Briefs.

By **May 31, 2011,** , the parties each must serve and file briefs not to exceed 25-pages in length per side, addressing the claim construction issues, including any evidentiary issues the parties anticipate will be placed before the court if an evidentiary *Markman* hearing is conducted.

D.      Rebuttal *Markman* Briefs.

By **June 29, 2011,** rebuttal claim construction briefs not to exceed 15 pages in length must be served and filed.

E.      *Markman* Hearing.

On or after **July 15, 2011**, if the Court so directs, a *Markman* hearing will be held before District Judge Gritzner in the United States Courthouse in Des Moines, Iowa. If a

*Markman* hearing is scheduled by the Court, then the parties may depose any disclosed *Markman* experts before the hearing.

   F. It is anticipated that the expert discovery schedule in this litigation will permit the parties to have a minimum of 30 days after the Court's *Markman* ruling before disclosing Initial (Burden of Proof) expert reports on **September 23, 2011**. Rebuttal expert disclosures shall be made on or before **October 28, 2011**. If the *Markman* ruling is not issued in time for this anticipated schedule, then the parties may move for an amendment to the expert discovery schedule to seek such a 30-day period after the *Markman* ruling.

   **7.** **Pleading and Disclosure of Affirmative Defenses to Willful Infringement**

   A. If Wells Fargo relies on advice of counsel as a defense to the charge of willfulness, Wells Fargo must produce to Autoscribe, within fourteen (14) days after a *Markman* ruling:

   i. copies of all written advice it received concerning the patents Wells Fargo is charged with infringing; and

   ii. an identification of any oral advice Wells Fargo received concerning the patents it is charged with infringing, including:

   (a) the giver(s) of the advice;

   (b) the recipient(s) of the advice;

   (c) the date(s) the advice was given; and

   (d) the substance of the advice.

8.      **Communications with Experts**

A.      Oral and written communications between an expert witness for any party or parties, and the party or parties, or their attorneys or representatives employing such expert, which are made in connection with the expert witness' engagement for this case shall not be discoverable, except to the extent that the expert relies upon them for his opinions.  Anything shown or told to an expert on which he/she relies, as well as the evidence, basis, or grounds in support of or countering the opinion, must be referenced in that expert's report, and is subject to discovery by the opposing party.

B.      Drafts of expert reports need not be retained or produced; and discovery will not be permitted regarding who, if anyone other than the expert, participated in the drafting of his/her report.  The court will not entertain motions on these two issues.

C.      All notes, memoranda and other writings of an expert witness that are prepared in connection with the expert witness' engagement of this case shall not be discoverable, except to the extent that the expert references them in preparing his report or consults them while testifying at a deposition or at trial.

D.      The provisions of Fed.R.Civ.P. 26(a)(2)(B) regarding the content of a written report of an expert are not changed by this stipulation except to the extent that the above restrictions on expert discovery are inconsistent with the Rule.